IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
AMY WEISCHEDEL CAMPBELL,            )
                                    )
               Plaintiff,           )
                                    )
          v.                        )    1:03CV00892
                                    )
THE TOWN OF SOUTHERN PINES; THE     )
SOUTHERN PINES POLICE DEPARTMENT;   )
GERALD GALLOWAY; STANLEY            )
KLINGENSCHMIDT; CHRIS BURGESS;      )
NICK POLIDORI; OTHER UNNAMED        )
EMPLOYEES OF THE TOWN OF SOUTHERN   )
PINES,                              )
                                    )
               Defendants.          )
```

## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

In a previous Memorandum Opinion and Order entered on July 28, 2005, the Court granted in part and denied in part defendants' motion for summary judgment. The claims which were allowed to proceed to trial were: (1) plaintiff's claim made under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., that her termination was based on her gender, (2) her Title VII claim that her termination was retaliation for her complaints about gender discrimination, (3) her Equal Protection and First Amendment claims under 42 U.S.C. § 1983 against defendants Galloway and Klingenschmidt to the extent that they were also based on her allegedly discriminatory/retaliatory termination, and (4) her claim for punitive damages under § 1983. All other claims were dismissed.

Following the entry of the prior Opinion and Order, defendants filed a "Motion to Alter or Amend Judgment." The motion focuses on the § 1983 claims against Galloway and Klingenschmidt which defendants say should have been dismissed in their entirety. Additionally, and of a lesser moment, the Court also has before it a motion by plaintiff to strike the reply brief that defendants filed in support of their Motion to Alter or Amend Judgment.

Defendants' motion states that it is brought under Federal Rule of Civil Procedure 59. They do not specify which subsection of that Rule they rely on, nor do they set out the standards which apply to their motion. However, in her response, plaintiff assumes that the motion is brought under subsection (e) of Rule 59. She also notes that such motions have a high threshold and may only be granted where (1) there is an intervening change in controlling law, (2) there is new evidence to be considered, or (3) there is a clear error of law to be corrected or manifest injustice to be prevented. <u>United States ex rel. Becker v. Westinghouse Savannah River Co.</u>, 305 F.3d 284, 290 (4th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 1012, 123 S.Ct. 1929, 155 L.Ed.2d 848 (2003). Plaintiff concludes that, because defendants do not rely on any new law or evidence, their motion must be based on the third ground. As to that ground, plaintiff points out that such a motion will not be granted based on mere disagreement. <u>Id</u>.

Defendants have not objected to plaintiff's assumptions regarding the grounds for the motion or to plaintiff's statement of the applicable legal standard. However, in reality, defendants'

-2-

motion does not appear to be a true Rule 59 motion at all. This is because the central issues are being raised for the first time. The reason for this likely is because plaintiff's complaint did not explicitly set out the exact nature of her § 1983 claims. Therefore, defendants could not fully address them in their motion for summary judgment. The Court's opinion only discussed the issues briefed by the parties and provided some additional general law dealing with retaliation and discrimination claims raised under § 1983. It did not engage in a full blown analysis of all aspects of all claims because there was no need to do so.

Defendants' current motion seeks to have the Court fully analyze issues that were either not mentioned or were only generally touched on in the prior opinion. As already stated, this is not a typical use for a Rule 59 motion. However, for three reasons, the Court will not refuse to hear the motion. The first is that the limited nature of the summary judgment briefing had its genesis in plaintiff's complaint. Simple fairness weighs in favor of defendants having a chance to have their arguments heard now that the claims have been properly defined. Second, further discussion on the important issues in the case may help guide the parties as they prepare the case for trial. Finally, some parts of the parties' briefs create a concern that general language in the July 28th opinion could be interpreted to mean more than it does. This would need to be clarified in any event. For all these reasons, even though defendants' motion is not one that would

ordinarily be permitted, the Court will make an exception in this case and decide the motion on its merits.

## **Retaliation/First Amendment Claim**

The first of plaintiff's remaining § 1983 claims which defendants challenge is her claim that she made statements about gender discrimination and/or sexual harassment and horseplay within the Southern Pines Police Department (SPPD), that those statements were protected speech under the First Amendment of the United States Constitution, that she was discharged by Galloway and Klingenschmidt in retaliation for making the statements, and that this retaliation violated her First Amendment rights and, therefore, § 1983. In the previous Opinion and Order, the Court stated that:

> In order to proceed under the First Amendment, plaintiff must first show that she engaged in speech relating to a public matter; second, that her interest in First Amendment expression outweighed the employer's interest in efficient operation of the workplace; and third, that there is a causal relationship between the protected speech and the retaliatory employment action. Love-Lane v. Martin, 355 F.3d 766, 776 (4th Cir.), cert. denied, ____ U.S. ____, 125 S.Ct. 49, 160 L.Ed.2d 18 (2004), and cert. denied, ____ U.S. ____, 125 S.Ct. 68, 160 L.Ed.2d 18 (2004).

Campbell v. The Town of Southern Pines, No. 1:03CV892, 2005 WL 1802405, at *19 (M.D.N.C. July 28, 2005). It then noted that: "Speaking out against gender discrimination is a matter of public concern for which employers must make accommodation." Id. at 43 (citing Seemuller v. Fairfax County School Board, 878 F.2d 1578, 1582 (4th Cir. 1989), Konits v. Valley Stream Cent. High School Dist., 394 F.3d 121, 124 (2d Cir. 2005), and Birch v. Cuyahoga

-4-

County Probate Court, 392 F.3d 151, 168 (6th Cir. 2004)). Finally, the Court then determined that plaintiff's free speech claims against defendants Galloway and Klingenschmidt could proceed. In making this decision, the Court was not asked to, and so did not, engage in a specific and in-depth analysis of plaintiff's speech using the process described in Love-Lane. Defendants also briefly raised a defense of qualified immunity, but the Court rejected it by pointing to Beardsley v. Webb, 30 F.3d 524, 530-31 (4th Cir. 1994). (Id. at 41) Again, no in-depth analysis was made on this point.

Galloway and Klingenschmidt now contend that the Court's decision not to grant their request for qualified immunity was incorrect and ask that the Court reconsider that part of its prior decision. It appears that defendants may regard this Court's citation of Beardsley as holding that speaking out against gender discrimination in any fashion constitutes a matter of public concern. They contend that plaintiff's complaints about sexual harassment were not clearly speech that addressed a matter of public concern because they were expressed in private and dealt with her private employment problems.

It is not at all clear that complaints about gender discrimination always amount to a matter of public concern and the Court did not intend its citation of Beardsley to be so construed. Defendants present cases from other circuits which found personal complaints about gender discrimination to be of a private nature. See, e.g., David v. City and County of Denver, 101 F.3d 1344 (10th

-5-

Cir. 1996), cert. denied, 522 U.S. 858, 118 S.Ct. 157, 139 L.Ed.2d 102 (1997); Morgan v. Ford, 6 F.3d 750 (11th Cir. 1993), cert. denied, 512 U.S. 1221, 114 S.Ct. 2708, 129 L.Ed.2d 836 (1994); Saulpaugh v. Monroe Community Hosp., 4 F.3d 134 (2d Cir. 1993), cert. denied, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); Gray v. Lacke, 885 F.2d 399 (7th Cir. 1989), cert. denied, 494 U.S. 1029, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). On the other hand, the Third Circuit's decision in Azzaro v. County of Allegheny, 110 F.3d 968 (3d Cir. 1997), might be read as holding that even such private complaints are a matter of public concern.[1] A recent unpublished Fourth Circuit case notes there to be a "debate among the circuits regarding whether complaints of sexual harassment count as such public matters." Mikkelson v. DeWitt, 141 Fed. Appx. 88, 92 (4th Cir. 2005). The court further states that the parties "ask us to weigh in on the debate" as to whether complaints of gender discrimination are a public concern, but the court declines the invitation and notes the answer "may very well change depending on the specific circumstances." Id. That is the position of this Court as well.

It is possible to read Beardsley as standing for the proposition that any kind of purely personal complaint about gender

---

[1] For cases arising in this circuit, the relevant body of law to consult in determining whether qualified immunity applies is comprised of cases from the United States Supreme Court, the Fourth Circuit, and the North Carolina Supreme Court. Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998), cert. granted and judgment vacated on other grounds, 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999). Therefore, a right recognized elsewhere, but not here, will result in a grant of immunity and conversely a right recognized here, but not elsewhere, will result in a denial of immunity. Id. This narrows the field of case law applicable to public officials as they perform their discretionary duties. Id.

-6-

discrimination amounts to a matter of public concern for First Amendment purposes.  In Beardsley, the plaintiff's supervisor in a sheriff's office made comments which were either gender based or of a sexual nature.  He also touched her shoulders during roll call and appeared with no apparent purpose whenever she met with other officers.  When she asked him to stop, the supervisor then began giving Beardsley the "cold shoulder" and criticizing her. Beardsley reported this conduct to the Sheriff.  The behavior then became worse and, after an additional complaint to the Sheriff resulted in even more retaliatory behavior, Beardsley quit her job. Beardsley, 30 F.3d at 527-29.

Beardsley raised a § 1983 retaliation claim against Webb, her supervisor.  This claim eventually went to trial and a jury returned a verdict in her favor.  On appeal, Webb asserted a qualified immunity defense to Beardsley's retaliation claim. However, the Fourth Circuit rejected this argument and held that the issue had been properly submitted to the jury.  Id. at 530-31.

The problem with interpreting Beardsley is that the discussion of the First Amendment violation is extraordinarily succinct.  In fact, that case never actually engages in a public/private speech analysis ordinarily present in such cases.  The opinion appears to rest on an assumption that Beardsley's gender discrimination complaints were of public concern.  The parties may well not have presented the issue to the Court for resolution.  For this reason, the Court does not find that Beardsley resolved the issue of whether purely personal complaints of gender discrimination

constitutes a matter of public concern for First Amendment purposes.

The instant case may be resolved by considering two propositions. First, complaints involving allegations of discrimination against others generally constitute speech of a public concern. <u>Givhan v. Western Line Consolidated School District</u>, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); <u>Love-Lane</u> <u>supra</u>; <u>Seemuller</u> <u>supra</u>. Second, the fact that a plaintiff's complaints about general gender discrimination or harassment were mixed with incidents pertaining only to herself does not rob her speech of public concern. <u>Connick v. Myers</u>, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d (1983).

In <u>Connick</u>, the United States Supreme Court evaluated a list of questions distributed by an assistant district attorney within the office where she worked. The questionnaire was distributed completely within the office and mostly asked staff members for their views on office morale and policies. <u>Id</u>. at 141, 103 S.Ct. 1687. Despite the largely private nature of the questionnaire, the Supreme Court found that one question -- asking whether office members felt compelled to work on political campaigns -- did address a matter of public concern. After making this finding, the Supreme Court stated that "[b]ecause one of the questions in Myers' survey touched upon a matter of public concern, and contributed to her discharge we must determine whether Connick was justified in discharging Myers." <u>Id</u>. at 149, 103 S.Ct. at 1691. In other words, the single question pertaining to public interest was enough

-8-

to color the entire character of Myers' speech and the Supreme Court did not attempt to separate the "public concern" speech from the "private concern" speech at that stage of its analysis.[2]

In the instant case, parts of plaintiff's speech clearly addressed matters of public concern under <u>Givhan</u> and <u>Love-Lane</u>, <u>Connick</u>.[3] This dictates that her overall speech be treated as addressing matters of public concern. Once plaintiff's speech is found to be a matter of public concern, defendants must, but do not at this time, give a reason for firing her that would outweigh her interest in speaking. This alone prevents the Court from granting

---

[2]It is worth noting that, while the Supreme Court treated Myers' survey as public speech for the purposes of the first part of its analysis, the largely private character of the survey did appear to weigh heavily against Myers in the next part of the analysis. The Supreme Court found that Connick's interest in preserving office harmony outweighed Myers' interest in making her speech. This is not a concern in the present case because defendants have not advanced any interest that would have been served by terminating plaintiff for her making complaints of gender discrimination and harassment. That is, the defendants here have not shown that plaintiff's speech created a disruption or was an insubordination.

[3]She made complaints about what she felt were systemic gender harassment and discriminatory attitudes, and she complained about general horseplay of a sexual nature within the SPPD. She alleged that (1) Lieutenant Chris Burgess stated at a Christmas party that "'Women do not belong in law enforcement,'" (2) male officers pretended to be having sex with one another, (3) while waiting for a female to get her belongings and leave a house, an SPPD sergeant made a comment to males in the house that "'I don't know what is on [television], but it has two girls running, it's got to be good,'" (4) Lieutenant Rodney Hardy and telecommunicator Shirl Snyder made sexual comments to each other, (5) several officers talked about rearranging patrol car seats to have prisoners sit "'spread eagle,'" (6) Officer Paul Wright stared at a female trainee until she moved from the seat where he usually sat for roll call, causing other male officers to laugh and state, "'Paul, you're the man'" and "'that's how to show her,'" (7) Lieutenant Burgess made a statement while pointing to his wedding ring and staring at a female officer that "'Isn't that just like a women [sic]. They mess with you at work and they mess with you and you're not at work,'" and (8) Lieutenant Burgess watched a female DWI suspect use the bathroom when he knew plaintiff was available to escort her. (Plaintiff's Response to Defendants' Motion For Summary Judgment Plaintiff's Affidavit Ex. A)

-9-

summary judgment to defendants in the present case.  However, there is even more, because the circumstances surrounding plaintiff's initial complaints of sexual harassment suggest that her speech was even more of a public nature than the speech in Connick.

One of the factors considered in Connick was the motivation behind the speech in question.  The Supreme Court found that the plaintiff in Connick was motivated by a desire to gather information to use in a dispute with the assistant's superiors.  Id. at 148, 103 S.Ct. at 1691.  Still, the Supreme Court found part of plaintiff's speech to be of a weak public concern for the reasons already discussed.

Here, in contrast, plaintiff first made general mention of her allegations to Lieutenant Chris Burgess during a conversation regarding her job performance.  Burgess then reported plaintiff's general statement to Galloway, who ordered plaintiff to detail and submit her allegations to him.  Although plaintiff did not want to do this, she complied.  In doing so, she attached a cover letter which stated that she felt she had been mistreated due to her gender and that Galloway had already prejudged the issue.  However, she also made it clear that she was presenting her "knowledge of sexual harassment within [Galloway's] police department" against her will in compliance with Galloway's request, but that she was "glad he was willing to look into the issues."  Plaintiff did not explicitly ask for anything for herself.  The context of plaintiff's speech makes it seem to be much less of a private nature as compared to Connick and certainly as compared to the out-

-10-

of-circuit cases cited by defendants.  This provides an additional reason to conclude that plaintiff's speech was of public concern.

In summation, it is not at all clear that <u>Beardsley</u> establishes a rule in the Fourth Circuit that there is an inherent public interest in all complaints of gender discrimination. However, whether or not this is so, <u>Connick</u>, <u>Givhan</u>, and <u>Love-Lane</u> dictate a conclusion that some of plaintiff's comments in the present case addressed matters of public concern because they partially dealt with acts of harassment against other employees, related examples of general sexual horseplay, reported some questionable interactions between SPPD officers and the public, and were not motivated purely by personal concerns.  A reasonable official in defendants' positions would have known this under the Supreme Court and Fourth Circuit law that existed at the time plaintiff was fired.  Defendants are not entitled to qualified immunity and their motion for reconsideration on this point will be denied.

### **Gender Discrimination/Equal Protection Claim**

The next part of defendants' motion is directed to plaintiff's claim that Klingenschmidt and Galloway violated her equal protection rights under the United States Constitution and § 1983 by disciplining/discharging her on the basis of her gender.  Here, defendants do not argue that a discharge based on gender would not amount to such a violation or that a reasonable official would not have recognized this fact under the law in place at the time of plaintiff's discharge.  Instead they contend that, because Galloway

originally hired plaintiff and Klingenschmidt once gave her a favorable performance evaluation, an inference exists that they did not later discriminate against plaintiff based on her gender. Defendants believe that plaintiff's evidence of gender discrimination is not sufficient to overcame this inference.

The inference to which defendants refer was described by the Fourth Circuit in Proud v. Stone, 945 F.2d 796 (4th Cir. 1991). There, a plaintiff was pursuing a claim of age discrimination. His hiring and firing were conducted about four months apart by the same person. In affirming the dismissal of the claim at the close of plaintiff's evidence during trial, the Fourth Circuit noted that "where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." Id. at 797. But it then stated that even a discharge in the circumstances described could be discriminatory where "egregious facts" exist. Id. at 798.

After Proud, courts extended its inference to other forms of discrimination, including gender discrimination. Evans v. Technologies, Applications, & Service Co., 80 F.3d 954, 959 (4th Cir. 1996). They also applied it to situations beyond hiring and firing. See, e.g., Hartsel v. Keys, 87 F.3d 795, 804 n.9 (6th Cir. 1996), cert. denied, 519 U.S. 1055, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997) (applying inference based on previous promotion); Mitchell v. Data General Corp., 12 F.3d 1310, 1318 (4th Cir. 1993)(applying

-12-

inference based on previous approval of transfer over other applicants).

Based on Proud and the subsequent cases, it would appear at first blush that the inference described in Proud would apply to Galloway and Klingenschmidt. Notwithstanding, for two reasons, such inference has limited utility for them. First, as plaintiff points out in her response brief, the inference itself has limits. In Proud, the court noted that the inference applied if the hiring and firing both took place within a "relatively short" amount of time. Proud at 945 F.2d at 797. The hiring and firing in Proud took place within a four month time span. Here, almost two years passed between plaintiff's hiring and termination. While this might not be enough time to remove the inference altogether, it is enough to weaken it somewhat.

Second, Proud noted that the inference may not be viable where there are egregious facts. Proud, 945 F.2d at 798. Such may be described in Johnson v. Zema Systems Corp., 170 F.3d 734 (7th Cir. 1999). There, an employee was dismissed by one of the same persons who hired him. He then brought a claim of racial discrimination. The trial level court held that the claim should be dismissed at summary judgment based partially on the "same-actor inference" described in Proud. In reversing the decision, the Seventh Circuit Court of Appeals noted that the inference was based on a "psychological assumption" that a person would not hire persons from a group that he disliked, force himself to associate with them, and then fire them. It then pointed out that this assumption

-13-

"may not hold true" in certain factual scenarios, including where an employer expects an employee to act, dress, or talk in a certain way and they do not comply with this stereotype or where an employer is unaware of his own stereotypical views until he has to deal with an employee of a certain type. For these reasons, it concluded that the inference may not always be dispositive.[4]

Similarly here, plaintiff is not alleging that Galloway or Klingenschmidt overtly hated all women, which the psychological assumption described in Proud would seem to dispel. Nor would any evidence support this. Rather, plaintiff contends that she acted in the same manner as male officers, but that her actions were viewed in a different way and treated in a very different manner. This is the type of situation where, as described in Johnson, the Proud inference would have a lesser impact.

To the extent that the Proud inference does apply in the present case, plaintiff's evidence is sufficient to prevent the use of the inference alone to dismiss plaintiff's case. In its July 28th Opinion and Order, the Court set out at length plaintiff's extensive evidence which could allow a jury to find that male officers who engaged in conduct/misconduct similar to plaintiff's actions were not disciplined at all, while plaintiff was fired. Of particular note was the extraordinarily similar conduct of some

---

[4] In fact, the court in Johnson stated that it had found no cases where a plaintiff was relying on circumstantial evidence to prove an improper motive, the plaintiff otherwise had sufficient evidence to survive summary judgment, and the same-actor inference precluded relief. Johnson v. Zema Systems Corp., 170 F.3d 734, 745 (7th Cir. 1999). While some time has passed following the Johnson decision, plaintiff asserts that defendants have not cited to such a case in the present action.

-14-

male officers on the very night she was supposed to have engaged in the misconduct that led to her firing.  As discussed in the July 28th Opinion and Order, defendants offered no explanation for this apparently disparate treatment.  Based on this strong evidence and the failure to rebut it, the Court concludes that this is a case where the Proud inference, while not irrelevant, does not entitle defendants to summary judgment.  Defendants' motion to alter or amend judgment will be denied on this point as well.

### Motion to Strike

As stated previously, plaintiff has filed a motion to strike the reply brief filed by defendants' in support of the motion to alter or amend judgment.  The motion to strike is mooted by the Court's decision denying defendants' motion for reconsideration and will be denied for this reason.

**IT IS THEREFORE ORDERED** that defendants' Motion to Alter or Amend Judgment (docket no. 56) be, and the same hereby is, denied.

**IT IS FURTHER ORDERED** that plaintiff's motion to strike defendants' reply brief in support of the motion to alter or amend judgment (docket no. 62) be, and the same hereby is, denied for being moot.

_____
United States Magistrate Judge

November 21, 2005